## Gribbins v. Kentucky Terminal and Traction Company, et al.

(Decided October 29, 1912.)

### Appeal from Fayette Circuit Court.

1. Street Railroads—Operation—Cars and Equipment.—In the absence of franchise regulations in respect thereto, street railroads

may operate cars of any length desired, so long as they are not inherently dangerous.

2.  Street Railroads—Operation—Rate of Speed.—The operation of a street car, in rounding a curve, at rate of six miles an hour, is not negligence, inasmuch as a lower rate of speed would not reduce the area of danger to pedestrians from the car projecting beyond the line of the track.

3.  Street Railroads—Operation—Duty to Persons in Rear of Cars.—Street railroad companies owe no lookout duty to persons in rear of their cars, and are not negligent, where a car, in rounding a curve, struck and injured a pedestrian, unless their employes in charge of the car saw, or, by the use of ordinary care, could have seen his position of peril, in time to have avoided the injury.

4.  Street Railroads—Operation—Pleading.—An allegation that employes in charge of a car, the rear end of which struck and injured plaintiff, saw, or, by the exercise of ordinary care, could have seen, plaintiff's position of peril, does not charge a breach of duty on the part of the street railway company.

5.  Street Railroads—Operation—Contributory Negligence.—A pedestrian, misjudging what would be a safe distance, to avoid collision with the rear end of a street car in rounding a curve, and resulting injury, was guilty of such contributory negligence as will defeat a recovery.

J. A. EDGE for appellant.

ALLEN & DUNCAN, WALLACE MUIR and STOLL & BUSH for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

This is an appeal from a judgment of the Fayette Circuit Court sustaining a demurrer to a petition, in which appellant sought to recover damages from appellees for injuries alleged to have been sustained by her, through the negligence of the agents, servants and employes of appellees in the operation of one of its cars.

It appears from the petition that the tracks of appellees run on South Broadway street, in the city of Lexington, Ky., to its intersection with Main street, at which point they turn north into Main street; that the tracks, in turning from South Broadway into Main, make a short, sharp curve; and that the end of cars in running around said curve, extend out over the street beyond the line of the car tracks; that on the 28th of August, 1911, while appellant was walking from the southeasterly corner of South Broadway and Main streets to the

northeasterly corner of said streets, she was struck by the rear end of a car, which was passing from Broadway into Main street, and severely injured. The petition further alleges that:

"At said intersection of said streets the whole streets are surfaced and paved with bricks and there is no well defined place of crossing, but pedestrians on said streets, cross from one side of the streets to another side, and from one corner to another corner, at all angles and directions, which is the usual method of traveling and which was then well known to the defendants and to their agents and employes who had charge of and were operating said car; that plaintiff walked across said intersection of said streets as stated and in so doing walked at a reasonable, and as she believed safe distance from the track on which said car was running, coming north on South Broadway street behind and toward plaintiff and passing her near the center of the curve in the track at said corner; that she did not know and did not believe that she was so near the said track, that said car would reach or strike her in making the turn at said curve, nor did she know the great or unreasonable distance that the rear end of said car would extend out over and beyond the said track and toward the place where she was walking, but she avers that the agents and employes of defendants, who had charge of and were operating said car well knew the distance that said car would extend over and beyond said track and toward the place where plaintiff was walking and said agents and employes saw plaintiff and knew that the rear end of the car would swing or extend out over and beyond said track and toward plaintiff a sufficient distrance to strike her, or by ordinary care could have seen her and known all of said things, but with gross carelessness and negligence, the defendants and their said agents and employes in charge of said car, failed and refused to warn plaintiff of the danger she was in turning said curve, said car would reach out to where she was or would strike her and so failed and refused to lessen the speed of said car which was then running at an unreasonable and high rate of speed, to-wit, as much as six miles per hour; that after the said agents and employes knew or by the exercise of ordinary care, could have known, that plaintiff was in danger of injury and would be struck by said car, they could easily have stopped said car and prevented

any injury to plaintiff, but through gross carelessness and negligence failed and refused so to do; that the rear end of said car projected out over and beyond the track and toward plaintiff and as it passed by, struck her on the back of the head and body and felled her to the hard street, inflicting upon her head a severe wound, bruised her arms, shoulder, body and limbs, injured her internally, shocked her nervous system and injured and wrenched her back causing her to suffer great pain and anguish both mental and physical. * * *

"Plaintiff says that all of said injuries and mental and physical pain and anguish and damages were directly and immediately caused by, and resulted from the gross carelessness and negligence of the defendants, jointly in not providing and having on said car a reasonably safe and proper truck or running gear so attached to the car as to prevent the end of said car from extending out beyond the rails of the track, at said curve, to an unreasonable and unusual distance as it then did, all of which defects were unknown to plaintiff and she could not have then known same by the exercise of ordinary care, and by the gross negligence and carelessness of defendants and their employes and agents in charge of said car in not warning plaintiff of the dangerous position in which she then was, and in not telling her that said car would strike her and in not stopping said car so as to prevent it from striking her, though all of said things and conditions were well known to said agents, or could have been known by the exercise of ordinary care by them or any of them."

It will thus be seen that the grounds of negligence, relied upon as supporting her cause of action, are two: First, that the defendants were operating a very long car, and that the wheels, under this car, were so adjusted that, in turning the curve, the rear end thereof projected as much as five feet beyond the track; and second, that it was being operated at an excessive rate of speed, considering the character of the turn which it was required to make at that point, that those in charge of it saw, or by the exercise of ordinary care, could have seen that plaintiff was so close to the track that the rear end of the car would necessarily strike her, as it made the turn, and that, under these circumstances, they should have warned her of the danger.

As to the first proposition, the allegation in the petition that the defendants were negligent "in not providing and having on said car a reasonably safe and proper truck or running gear so attached to the car as to prevent the end of said car from extending out and beyond the rails of the track, at said curve, to an unreasonable and unusual distance," when read in connection with the further allegation that, in rounding this curve, the rear end of the car extended out over the rails, a distance of five feet, is not sufficient to show any negligence in the construction of the car. A car of any length must necessarily extend over and beyond the rail some distance, in rounding a curve, and that distance must, of course, vary with the length of the car and the character of the curve. As the only negligence charged in the construction of the car is, that the wheels were so adjusted thereunder as to permit the rear end thereof, in passing around a short, sharp curve, to extend as much as five feet beyond the line of the car track, it cannot be said, as a matter of law, that this construction is negligence. In fact, when the length of the car and the character of the curve are taken into account, it is difficult to see how it could have been constructed so as to prevent the rear end from extending as far, or even farther, beyond the track line, as it is alleged that the rear end of this car did extend. It does not appear that, in the exercise of their franchise, appellees may not operate cars of any desired length and in the absence of such allegation, we know of no rule prescribing or limiting the size or dimensions of traction cars. So long as, in their construction, they are not inherently dangerous, no ground of complaint is afforded, because they are unusually long or of different lengths upon the same line. It is not alleged that a car, of the length of that which struck appellant, could be constructed upon lines different from that along which it was, in fact, constructed. It would be presumed that, in constructing their cars, appellees would have in view primarily the safety of the car as a passenger vehicle, and the wheels and trucks would be so placed thereunder as to adjust the burden which they had to bear in such a manner as to render the car least liable to leave the track, when in motion. In the absence of some allegation of faulty construction, other than the manner of the adjustment of the wheels, by reason of which the rear end of the car was caused to extend out over the street a dis-

tance of five feet, the trial court was warranted in holding that the allegation of negligence in the construction of the car was not sufficient to support a cause of action.

The next ground of negligence relied upon is, that the companies were negligent in not warning plaintiff of the dangerous position, in which she had placed herself, by telling her that the car would strike her and in not stopping the car, so as to avoid having the rear end thereof strike her. The petition, upon this branch of negligence is faulty in two particulars. In the first place, the companies were under no duty of keeping a lookout for persons, so as to prevent them from coming in contact or collision with the rear end of their cars, as was expressly decided in South Covington & Cincinnati Street Railway Co. v. Besse, 33 Rep., 52, and Louisville Railway Co. v. Ray, 124 S. W., 313. Not being required to keep a lookout for her safety or to warn her that she was liable to be injured by the rear end of the car, as it turned the corner, if she came too near the track, those in charge of the car owed her no duty whatever, unless they actually saw or discovered the peril of her position in time to have avoided injuring her. The petition alleges that the employes, in charge of the car, saw the plaintiff and knew that the rear end of the car would swing out over the side of the track toward plaintiff, a sufficient distance to strike her, or by the exercise of ordinary care, could have seen her and known of said things. This, in effect, is but an allegation that, by the exercise of ordinary care, those in charge of the car could have seen her peril, and hence, is not a sufficient allegation to support the plea of negligence; for, where no lookout duty is required, those in charge of the car must have had actual knowledge of her perilous position in time to have avoided injuring her, before the companies can be held to have been guilty of actionable negligence.

The speed at which the car is alleged to have been traveling, to-wit: six miles an hour, cannot be attributed to appellees as an act of negligence; for, the rear end of the car, in rounding the curve, was not thereby caused to extend any further beyond the track than it would have, if it had been going at a much lower rate.

Considered as a whole, the petition not only fails to charge any actionable negligence on the part of appellees, but, on the contrary, shows that, in crossing the street at that point, appellant, while aware of the pres-

ence of the car upon the track and that it would turn
around the curve, felt that she was at a sufficiently safe
distance to avoid coming in contact with the end of the
car. She simply misjudged what would be a safe dis-
tance and continued on the way across the street, without
looking to ascertain whether she was out of danger. The
exercise of the slightest care on her part would have
saved her from injury. The street at that point was of
ample width as to have enabled her to cross in safety,
and it is apparent that her failure to do so was more the
result of lack of care on her part, than of any negligence
on the part of those operating the car. The facts in this
case are very similar to those in South Covington & Cin-
cinnati Street Railway Co. v. Besse, supra, and the rea-
soning of the court in that case applies with peculiar
force to the case at bar. There, the court said:

"The street car must stay upon its tracks. In making
a turn, as the trucks are not at the end of the car, the
end must project more or less beyond the track according
to the length of the car and the degree of the curve.
*  *  * It is, therefore, incumbent upon the driver of
a vehicle passing a street car to keep out of the way, and
at curves to drive further from the car than at other
points. He must expect the car to stay upon its tracks,
and he must expect that the end of the car will swing out
in turning a curve; and, if he does not make a sufficient
allowance for the swing of the car, and drives so close
to it that the car in turning strikes the vehicle, the fault
is his own, and not that of the street car company. The
motorman cannot leave his track. The driver of the
vehicle has the whole street to drive on, and it is his
fault if he does not drive far enough from the car to pre-
vent the hind end of the car from hitting his wagon as
he passes it."

The principle announced in the Besse case was re-
affirmed by this court in the later case of Louisville Rail-
way Co., v. Ray, supra, where, like in the case at bar, the
plaintiff was injured by coming in contact with the rear
of the car, as it was rounding a curve. Counsel for ap-
pellant cites and relies upon the case of Mittleman v.
N. Y. City Railway Co., 107 N. Y. Supp., 108. An ex-
amination of that case shows that the facts are wholly
unlike the facts in the case at bar. There, the tracks of
the company ran along near an excavation, the space be-
tween the excavation and the line of the track being so

narrow that there was no room for pedestrians to pass between the excavation and the track, and the employes knew this. While a pedestrian was passing along the track near this excavation, the car was started and ran against the pedestrian, causing him to be thrown into the ditch. Here, appellant was placed in no such difficulty. She had the entire street, outside of the car track, in which to walk. The car, of course, was limited to its track. It could not have struck her, had she walked a safe distance from the track. She alleges that she thought she was at a safe distance; hence, it is apparent that her injury was the result purely of her error in judgment, for which appellees were, in no wise, responsible. The demurrer was correctly sustained.

Judgment affirmed.