## JOHNSON v. GLIDDEN.

1. In an action for damages in consequence of the alleged negligent use of a gun in the hands of defendant's minor son, the complaint set out a sufficient cause of action, where defendant was connected with such injurious act by allegations that he had purchased and given his son a gun, that such son was in the habit of using it negligently, and that defendant so knew he was so using it, and encouraged and consented to such negligent use thereof.

2. On an issue as to whether defendant's minor son was in the habit of using a gun in a reckless manner, with knowledge of such use thereof on the part of defendant, it was not error to admit proof of the manner in which such gun was used by the son on other occasions than the one in question, where defendant's knowledge of such acts was shown by other witnesses.

3. A declaration to the jury "that a father, as such, is not liable for the ordinary acts of his infant son," in an instruction respecting the parents liability for an injury caused by a reckless act on the part of such child, though an erroneous statement of the law, is standing alone, was not prejudicial, where it was followed by such plain and explicit directions regarding the facts necessary to a recovery by plaintiff that it was impossible to believe that the verdict was influenced by such declaration.

4. The evidence was sufficient to support a verdict for damages for injuries received by plaintiff in consequence of the reckless use of a gun by defendant's minor son, where the jury were warranted in finding that defendant kept a shotgun, which his son was permitted to use; that he had frequently used it prior to the accident in question; that he used it in a reckless manner when plaintiff was injured, and had done so on other occasions; and that defendant, though informed of such reckless acts on the part of his son, permitted him to continue in such course of conduct.

(Opinion filed October 18, 1898.)

Appeal from circuit court, Spink county. Hon. A. W. CAMPBELL, Judge.

Action by Charlotte Johnson against Arthur J. Glidden, for damages in consequence of the alleged negligent use of a gun by defendant's minor child. From a judgment on a verdict in favor of plaintiff, and from an order overruling his motion for a new trial, defendant appeals. Affirmed.

The facts are stated in the opinion.

*A. W. Burtt,* for appellant.

Neither parent nor child is answerable as such for the acts of the other. Comp. Laws, § 2620.

A father is not liable for the wrongful acts of his minor son unless the acts are committed with the father's consent or in connection with, the father's business. Smith v. Davenport, 24 Pac. 851.

The record nowhere discloses such negligence on the father's part as would justify a verdict against him. Chaddock v. Plummer, 50 N. W. 135; Baker v. Morris, 7 Pac. 267; Harris v. Cameron, 51 N. W. 437; Hagerty v. Powers, 5 Pac. 622; Tift v. Tift, 4 Den. 177, Maddox v. Brown, 36 Am. Rep. 336; Price v. Mueller, 41 Mich. 214; Brooke v. Lingerman, 41 Mich. 711.

*H. G. Warnock,* for respondent.

HANEY, J. Plaintiff's cause of action is thus stated in her complaint: "(1) That Earnest Glidden is the son of said defendant, and was on the 17th day of August of the age of 13 years, living at home with his said father, and under his custody, care and control. (2) That prior to said 17th day of August, 1895, said defendant carelessly and negligently purchased

and gave to said Earnest Glidden a certain firearm, known as a gun, which said Earnest Glidden was in the habit of using in a careless and negligent manner, so as to endanger the life and. property of persons about him, all of which was well known to to this defendant. and who encouraged, countenanced and consented to his carrying said gun and in so using it in said careless and negligent manner. (3) That on the said 17th day of August, 1895, this plaintiff was watering a colt on her own premises. when said Earnest Glidden came along with his gun, and. against the request of this plaintiff, carelessly and negligently fired said gun in front of said colt; that said colt thereby became frightened and ran away, and this plaintiff, without any fault of her own, became entangled in a picket rope attached to said colt, and was dragged for a long distance over the prairie, and was severely injured, in that her flesh was badly bruised and lacerated, and her back was strained, so, as she believes, to be permanently injured. (4) That by reason of said injuries she suffered great bodily pain, and was confined to her bed for a long time, and was and still is unable to do her housework, or any work, and is, as she believes, permanently injured and otherwise greatly injured, and was compelled to spend $100 for medical attendance, nursing and help about the house, to her damage of five thousand dollars." The allegations of the complaint are denied, except as to the first paragraph. and defendant alleges that the plaintiff was guilty of contributory negligence.

Does the complaint state a cause of action? It was not assailed until the trial began, and it must be liberally construed. Our Civil Code provides that "neither parent or child is answerable, as such, for the act of the other." Comp. Laws, §

2620. It is a rule of the common law that "a father is not liable in damages for the torts of his child committed without his knowledge, consent, participation,, or sanction, and not in the course of his employment of the child." Schouler, Dom. Rel. § 263. The allegations of the complaint connecting defendant with the injurious act of his minor child are these: (1) He purchased and gave him a gun; (2) the child used it negligently; (3) the father knew he was so using it; and (4) he encouraged, countenanced and consented to such negligent use. It may be conceded that it is not negligence *per se* for a father to furnish his son, aged 13 years, with a gun, or permit him to use one. if the boy uses it with ordinary care and the father is justified in presuming that it will be so used; but, if he knows that his son is using the firearm in such a careless and negligent manner as to endanger the life and property of persons about him, it is certainly his duty to interpose his parental authority, and prevent, if possible, a course of conduct on the part of his child which is likely to produce injury to others. In a case in Wisconsin, where two minor sons of the defendant came out of their father's house, and fired off a pistol, and shouted, and so frightened the plaintiff's horses that they jumped suddenly forward and threw a person out of the seat, and injured her, the court employs this language: "It will be seen by an examination of the record that it became important for the plaintiffs. to connect the father with the acts of his young sons, which the plaintiffs allege caused the injury complained of, and for this purpose the plaintiffs offered evidence tending to prove that the sons had frequently. before the day upon which the accident happened. called abusive names, shouted and frequently discharged firearms when persons were

passing the house of the defendants, and that this was often done in the presence of their father. All evidence of this kind was excluded. This, we are inclined to hold, was error. If the father permitted his young sons to shout, use abusive language, and discharge firearms at persons who were passing along the highway in front of his house, he permitted that to be done upon his premises which in its nature was likely to result in damage to those passing; and, when an injury did happen from that cause, he was not only morally, but legally responsible for the damage done." Hoverson v. Noker; 60 Wis. 511, 19 N. W. 382. The principle thus announced is applicable to the case at bar. If, as alleged, defendant's son was in the habit of using the gun given him by his father in a dangerous manner, and defendant knew of such use, it was his moral and legal duty to prevent a continuation of such conduct; and it is immaterial whether his knowledge was derived from seeing his son's acts of negligence, or from being informed of them by other persons. His culpability consisted in permitting his son to continue in a course of conduct which in its nature was likely to result in damage to those with whom his son came in contact. If he knew his child was using the gun recklessly, as an ordinary intelligent person he must have apprehended the natural consequences of such recklessness; and, as a good citizen, he should have made a reasonable effort to prevent such consequences. On the contrary it is alleged that he encouraged, countenanced, and consented to the manner in which his son was carrying and using the gun. We think defendant's objection to the introduction of any evidence under the complaint was properly overruled.

It follows from what has been stated that the court did not err in admiting evidence tending to prove that the son of defendant used the gun negligently on other occasions than that involved in this case. One of the material issues was whether he was in the habit of using the gun in a reckless manner, and the only way to establish such fact was by evidence showing how he acted when using it. Of couse, it was necessary to show that defendant knew of his culpab'e conduct, but such knowledge could be established by other witnesses than those who testified concerning the acts of his son. The natural order of proof would be to first show acts of negligence, and then bring knowledge of any or all of such acts home to the father.

The charge of the court, taken as a whole, substantially conforms to the law as herein announced. As a preliminary and general declaration of a parent's liability, the court uses this language: "You will understand as a proposition of law that a father, as such, is not liable for the ordinary acts of his infant son." Standing alone and unqualified by other portions of the charge, this sentence does not correctly state the law, and the use of the word "ordinary" might mislead a jury; but the words quoted are followed by such plain and explicit directions regarding the facts necessary to a recovery by plaintiff that it is impossible to believe that the verdict was influenced by the preliminary statement given above. The language of the court is as follows: "In order to hold the father liable you must be satisfied by a preponderance of the evidence that the boy had been repeatedly careless in the use of the gun as claimed by this plaintiff. You must further find by a preponderence of the evidence that after Mr. Glidden, this defendant, the father, had been informed and notified of the fact that this

boy was careless, negligent and reckless, in the use of this fire-arm, that he did, with knowledge of these facts, cause and he thereafter put the means of doing mischief in his hands, by permitting him to take this gun; then he would be liable and responsible for such damages the boy may have inflicted by reason of the careless use of the gun. Thus, you will see the necessary things for the plaintiff in this case to prove in order to recover are these: First, that she was injured as she alleges; that this injury was caused by reason of the careless-ness and negligence of this boy; that the boy had been careless and negligent for some period of time before this; that the father had full knowledge of this fact; and that, with full knowledge of this fact, he put the means of doing mischief in this boy's hands, by allowing him or permitting him to take this gun and go where he pleased with it. If all these facts are established, and, further, if it should appear that the plaintiff herself was without any negligence at the time of this accident, then the plaintiff would be entitled to a verdict at your hands for such damages as she may have sustained. If any of these essential facts are not established by the testi-mony in this case, then the plaintiff cannot recover, and your verdict should be for the defendant."

Finally. it is contended that the evidence is insufficient to sustain the verdict. In discussing this phase of the case it must be remembered that the jury were at liberty to believe the witnesses for plaintiff, and that every fair and reasonable in-ference must be drawn from their testimony which can be to sustain the verdict. Viewed·in this light, the jury were war-ranted in finding that the defendant kept a shotgun in his house which his son was permitted to use whenever he desired,

and that he had frequently used it prior to the accident in question; that the boy used it in a reckless and dangerous manner when plaintiff was injured, and upon at least two other occasions. In brief, they were justified in finding that the boy had used the gun for some time prior to the accident in a reckless manner, and that his use of it was permitted by the parent. There is sufficient evidence to establish all the elements of plaintiff's cause of action, provided defendant knew his son was in the habit of using the gun in a dangerous manner. The only evidence tending to prove that defendant knew of the manner in which the gun was used by his son is that of the plaintiff, who says: "I told Mr. Glidden that he would [should] take care of his boy; that his boy had been down there and shot at the horses, and scared them loose; and he answered and said, 'Wherever there is a lake the boy has a right to hunt.' I told him that the boy shot after the horses; that is what I told him at the time." This is denied by defendant, but must be accepted as true by this court. If so, defendant was informed that his boy was conducting himself in a most reckless and unlawful manner. Upon receiving this information, in place of investigating the charge, with a view to prevent a continuation of his son's reckless conduct if found to be true, he seems to have sanctioned it; and the fact that such conduct continued indicates that he did nothing to prevent it. He was informed that his son was pursuing a course of conduct which in its nature was likely to produce injury to the persons and property of others; and we think the jury was justified in concluding from all the evidence that he not only failed to exercise his parental authority to prevent a continuation of such conduct, but, by his own conduct, encouraged, countenanced, and con-

sented to the course being pursued by his son.     Such was evidently the view of the trial court and jury, and we are not inclined to disturb the verdict. All the assignments of error have received attention. Finding no reversible error, the judgment of the circuit court is affirmed.