[No. 21997. Department Two. October 31, 1929.]

RUBY NORTON, *by her Guardian ad litem, Margrete Norton, Appellant,* v. PENNY PAYNE *et al., Respondents.*[1]

[1]Reported in 281 Pac. 991.

242

*James W. Anderson,* for appellant.

*W. E. Gwynn,* for respondents.

HOLCOMB, J.—This action was brought for an infant aged five years, by her guardian *ad litem,* for injuries sustained by being struck in the eyeball with a stick in the hand of a child of respondent, aged seven years, possessed of the habit of striking smaller children in the face with sticks. It is also alleged that the parents of the child causing the injury knew about, and encouraged her in, her habit of striking other children with sticks. The evidence of both parties was introduced upon a trial to the court and a jury, but the court, at the conclusion of all the evidence, granted an involuntary nonsuit, discharged the jury and dismissed the action with prejudice.

There was evidence on the part of appellant that, in a very short time after the affair, respondent, the husband, made an admission to appellant, the mother of the injured child, that his daughter had the "dirty

habit of picking up sticks and hitting." The mother of the offending child also stated to the mother of the injured child that, after the striking of the Norton child, her husband had mentioned to her the habit of their daughter Marjorie of picking up sticks and hitting other children, and that her husband upheld her in her conduct.

There was also evidence that Marjorie had struck another child with a berry-box cleat before the Norton affair.

During the trial, the trial court rejected testimony offered on behalf of appellant to the effect that, immediately after she had been hurt, Ruby, the injured child, stated to her mother that Marjorie hit her with a stick because she, Ruby, wanted to go home and Marjorie did not want her to go; thereby tending to show that the assault was not provoked by Ruby, and that there was no fault on her part. This was rejected by the trial judge because the rule allowing statements constituting part of the *res gestae* was applicable only in criminal cases.

There was evidence on behalf of appellant that quite serious and painful injuries were sustained by the child and substantial expense incurred for medical and hospital services.

An involuntary nonsuit and dismissal of the plaintiff's cause of action is like a directed verdict or granting a judgment notwithstanding the verdict after verdict by the trial court. If there is competent proof to be considered by the jury, which would sustain a recovery, it should not be granted. *Fobes Supply Co. v. Kendrick*, 88 Wash. 284, 152 Pac. 1028; *Godefroy v. Hupp*, 93 Wash. 371, 160 Pac. 1056, Ann. Cas. 1918E 494; *Fisher v. Tacoma Railway & Power Co.*, 148 Wash. 122, 268 Pac. 180.

The fact that there was evidence on behalf of the de-

fendant controverting that of the plaintiff is not to be considered upon such motions. *Bullock v. Stanley,* 72 Wash. 204, 130 Pac. 95; *Sutherland & Brewer v. Lewis River Boom & Logging Co.,* 73 Wash. 75, 131 Pac. 455; *Davies v. Rose-Marshall Coal Co.,* 74 Wash. 565, 134 Pac. 180.

Respondents contend and the trial court agreed, that the isssues raised by the pleadings in this case were three:

(1) Was respondents' child possessed of the habit of striking other children with sticks?

(2) Was the parents' knowledge of their child's propensity, if there was a propensity, such as to render them liable for the acts of their child?

(3) If they had knowledge of this habit, did they use such care as ordinarily prudent persons would have used to prevent any injury to appellant's child?

It is then asserted by respondents that evidence was received on the first two of these issues and none upon the third in support of appellant's cause of action.

It is therefore conceded that there was evidence introduced on behalf of appellant that respondents' child had the habit of striking other children with sticks and that there was knowledge on the part of the parents of their child's propensity.

The pivotal issue, according to respondents' view, is that there was no evidence that respondents failed to use such care as ordinarily prudent persons would have used to prevent any injury to appellant's child.

It is clear that there is no evidence that respondents actually participated in the wrongful act of their child. But negligence is one of the things that is to be inferred from the circumstances if the other two propositions were sufficiently established by competent evidence to go to the jury.

It is true that parents are not liable for torts committed by their minor children without participation in the fault by the parent; and it is not enough to make the father liable that he knew that his child was heedless or vicious. 20 R. C. L. 627.

But, by the same authority, it seems to be stated as a general rule that the parent is liable if he was himself guilty of negligence. He is liable, however, only for his own fault, and not that of his child.

While it is also true that the parents did not actually participate in the particular tort here in controversy, they did know of the habit of their child of striking other children with sticks. They were bound to know that was a habit liable to cause injury to other children, especially smaller children. No one could be so familiar with the habit of a child of that age as the parent, and while the parent cannot be held to the degree of liability of one harboring a vicious dog after notice of its viciousness, or a wild animal, we think parents should be held responsible and liable for a dangerous habit of a child of which they have knowledge and take no steps to correct or restrain. It is that which constitutes the negligence on the part of the parent.

It is stated in 29 Cyc. 1667 as the rule that:

"If a father knows that his minor child is committing a tort and makes no effort to restrain him, he will be deemed to have authorized or consented to its commission so as to render him liable."

Certainly, his knowledge of the habit may be shown by his declarations.

True, in this case, there is no evidence that the father knew his child was committing this particular tort, and, in fact, the evidence is to the contrary; but the evidence is that the parents knew that their child

was guilty of committing this particular kind of tort habitually; that the father encouraged her therein; which implies that he made no effort to restrain the child and therefore must be deemed to have consented to its commission at any time by the child.

In *Thibodeau v. Cheff*, 24 Ont. L. Rep. 214, Ann. Cas. 1912A, 582, an action for damages caused by the destruction of a wheat stack by an imbecile and irresponsible son sixteen years of age, where the father knew that the son had the habit of smoking and of carrying matches and of negligently setting out fires where they were likely to cause damage, and made no effort to restrain the conduct, the father was held liable upon the ground that the child's tort was committed with his implied knowledge and acquiescence; and that a father's assent or consent to a tort committed by his child may be expressed or implied, rendering him liable without direct proof of his actual knowledge of the particular tort.

Another text, 29 Cyc. 1666, was approved in that case, and was also approved by the court of errors and appeals in New Jersey in *Doran v. Thomsen*, 76 N. J. Law 754, 71 Atl. 296, 19 L. R. A. (N. S.) 335.

In another case from the same jurisdiction, *Corby v. Foster*, 29 Ont. L. Rep. 83, 7 B. R. C. 16, the last cited case was followed and reaffirmed, although in the *Corby* case there were distinguishing factors because of which liability of the parent was denied, as there was nothing upon which negligence could be based.

In *Hoverson v. Noker*, 60 Wis. 511, 19 N. W. 382, the father permitted his sons, upon his premises, to shoot, fire off pistols, etc., when persons were passing along the highway in front of his house, and it was held that permitting his children to so act rendered him liable

because he had control of the premises as well as the children.

In *Johnson v. Glidden,* 11 S. D. 237, 76 N. W. 933, the father had placed a gun in the hands of a son of about thirteen years of age. The son, to the knowledge of the father, conducted himself in a most reckless and unlawful manner with the gun, but the father still left him in the possession and control of it. That court held that the jury were justified in concluding from all of the evidence that the father had not only failed to exercise his parental authority to prevent a continuation of such conduct, but by his own conduct had encouraged, countenanced and consented to the course pursued by the son.

In *Paul v. Hummel,* 43 Mo. 119, the court held that, even though the plaintiff had established that the boy who committed a tort was of a vicious disposition and habits, and that the father knew it at the time, he was not responsible in damages for the injury sustained, when he neither assented to nor ratified the tort.

In that case, the court seemed to lay great stress upon the proposition of law which it stated incorrectly as follows:

"When the minor has committed a tort, with force, he is liable at any age to be proceeded against as an adult." (Citing authorities.)

There was an inaccurate statement of the law, for a minor cannot be proceeded against for his own wrong if he is of such tender years that he is conclusively presumed in law to be incapable of any form of negligence or legal wrong. Such a child is said to be *doli incapax.* That is well settled in this jurisdiction and many others. 14 R. C. L., p. 259, § 36.

In a somewhat similar case to the *Johnson* case, *supra, Hagerty v. Powers,* 66 Cal. 368, 5 Pac. 622, the

California supreme court held otherwise as to the liability when the tort was committed while not in the course of employment of the child as a servant, or as an agent, strictly upon the principle that the child itself was liable. No consideration was given to the negligence of the parent as to the dangerous propensity of the child and implied acquiescence therein.

We cannot approve the Missouri and the California cases.

While we heartily approve the rule that a child that is *doli capax* is liable for torts committed by itself, so also may the parent be held responsible for the negligence of the parent in causing the child to become dangerous and not attempting to restrain it.

See notes to cases in Ann. Cas. 1912A, commencing p. 455; 29 Cyc. 1666, and 74 Am. St. 801.

Of all the cases we have read, we approve the results and the reasoning employed in the *Thibodeau* and *Johnson* cases, *supra*. In the *Johnson* case, the court said that the jury was justified in concluding from all the evidence that the father not only failed to exercise his parental authority to prevent a continuation of the conduct of the son, but by his own conduct encouraged, countenanced and consented to that course being pursued by the son.

In this case, we think there was sufficient evidence as to the dangerous habit and tendency of the child of respondents, of their knowledge thereof and of their upholding it in that dangerous habit, so that it became a question for the jury of the negligence of respondents as alleged in the complaint.

■ The evidence of the mother of the injured child of her statements made almost immediately after the affair was manifestly *res gestae* and should have been admitted. The *res gestae* rule applies as well in civil as

in criminal cases. It was error to reject that testimony. *Whiting v. Seattle,* 144 Wash. 668, 258 Pac. 824.

The judgment is therefore reversed and the cause remanded for a new trial.

MITCHELL, C. J., FULLERTON, MAIN, and FRENCH, JJ., concur.